Mr., Chief Justice Sharkey
delivered the opinion of the Court.
This was, an action of ejectment, in which the defendant succeeded, and the plaintiff brings up the case by writ of error. The declaration is for twelve hundred and eighty acres of land, but the amount claimed by defendant seems to be two hundred and fifty-six acres, being section thirty-three, in township twenty-two, of range eight, west. The plaintiff derives title from Hugh Foster, #who claimed under the treaty of Dancing Rabbit Creek, as the head of a Choctaw family, and the defendant claims under a patent to Pearce Noland, as the assignee of Jefferson College. The same case was once before this Court, and many of the questions now raised fall within that decision. The points are numerous, and we cannot'more conveniently dispose of them than by taking them up as they are presented by the assignment of errors.
1st. It is said the Court erred in allowing Mrs. Parish, an Indian woman, to give evidence in the cause. As a general rule, all per *576 sons of a proper age are competent witnesses, unless excluded by irreligious opinions, or by express statutory provision on account of some other supposed disability, or unless they have been convicted of some of the crimina falsi. The restrictive act of 1822, which made Indians incompetent as witnesses, was so far repealed by the act of 1829, by which all the privileges, immunities, and franchises of white persons were extended to Indians. How. & Hutch. Dig. 76. This removed the disability and made them competent.
2d. The Court erred in not permitting the plaintiffs to prove by S. B. Parish, that Hugh Foster held possession of his reservation, at Indian Point, by Moses Foster, his brother and agent, up to the 24th February, 1836, the period of five years after the treaty. As a general rule, the possession of the agent is the possession óf the principal, but the language of the treaty does not seem to warrant the application of this rule. It is, “If they (the Indians) reside upon said lands, intending to become citizens of the State, for five years after the ratification of this treaty, in that case a grant in fee simple shall issue.” The spirit of the treaty was to grant to each Indian a home, not a fund to be otherwise used, and the condition subsequent seems to require an actual residence on the land. This very point seems to have been in effect decided on the former trial. 4 Howard, 522. A condition that a party shall live upon land so long, is not performed by leasing it. If a bouse be granted to a man for life, on conditions that he shall dwell in it during the term, it is not sufficient thát he dwell in it once during the term, but he must do so all the term, or else the condition is forfeited. Sheppard’s Touchstone, 136.
3d. That the Court erred in rejecting the testimony of Mrs. Parish, to prove that Hugh Foster’s mother, an Indian woman, and head of a family, obtained a reservation under the treaty, including the improvement on Black Creek, on which Hugh and his mother resided at the date of the treaty. The defendants had introduced this same witness, and her evidence conduced to prove that Foster’s improvement at the date of the treaty, was on Black Creek, and not at Indian Point, and on cross-examination of the witness, the fact on which this assignment is predicated, was offered to be proved, to rebut the presumption of Foster’s right on Black Creek. The witness *577 proved, that at the date of the treaty, Foster’s mother was living with him on Black Creek, and that he soon afterwards left for the Mississippi river, giving his mother the improvement on Black Creek. Two Indian families residing together, would each, no doubt, be entitled to reservation, and this evidence tended, very remotely it is true, to rebut Foster’s right; but it is "objected,’that if Foster’s mother had obtained her reservation on Black Creek, the fact was susceptible of better proof, the register and certificate of the locating agent; and this objection we think, must prevail. Parol proof would be admissible to show her right to a reservation ; but if the reservation was located and conferred to her, these facts were susceptible of higher proof.
4th. The Court erred in refusing to give to the jury the charges asked for by the plaintiffs’ counsel. The charges asked, were five in number, and may be succinctly stated thus : That the act of the locating agent, which located Foster’s reserve, cannot be impeached ; that even if Hugh Foster left his reserve, before the expiration of five years from the ratification of the treaty, his right is not void but voidable, and that judicial proceeding was necessary to try the fact of forfeiture ; that the right of the grantor to enter upon the land for a breach of the condition for five years’ residence, is such a right as may be waived ; that if Foster resided on his residence four years and eight months, a mere absence from the land, without any intention of fixing a residence elsewhere, does not amount to a change of residence, and his domicil was still on the reserve until 24th Feb. 1836, unless he had previously fixed on another residence ; and lastly, that if Foster was entitled to a reservation under the 14th article of the treaty, and had it located by the proper agent, he thereby acquired a title in fee simple, without five years’ residence on the land.
The first charge asked, as a legal proposition, is undoubtedly too broad. We held on the former trial, that the certificate of Martin, as the locating agent, was an official act within the scope of his duty, and as such entitled to credit ; but we cannot say, in general terms, that it cannot be impeached. In the case of Niles v. Anderson, et al., 5 Howard, 366, it was held that the acts of the agents under the Chickasaw treaty might be impeached for fraud ; but the *578 broad proposition contained in the charge here asked, would exempt the acts of the locating agent from impeachment, even for fraud. This question too, to us, seems to be irrelevant, as the record contains ¡lo evidence which has the effect which the counsel designed to counteract.
The Court did right also in refusing to instruct the jury, that even if Foster left his reserve before the expiration of five years, his title was not void, but voidable only, and that judicial proceeding was necessary to settle the forfeiture. By the Common Law, a grantor upon condition subsequent was compelled to enter or make claim for the breach of conditions, because his failure to do so might be construed into a waiver of the conditions. He was, however, excused, if entry could not be made ; but this doctrine can have no application as against the United States, whose possession in all cases is merely constructive, or legal, and as against whom no laches are chargeable. But this was a grant on condition of residence, and if the grantee abandoned the residence he abandoned his right, and thus avoided it himself without entry or claim by the grantor. There would be better ground for the application of this rule, if Foster was in possession, but he occupies the place of plaintiff, having actually lost possession, which is the object of an entry for conditions forfeited. He cannot urge a constructive waiver of the condition in his present attitude. He must rely upon a perfect title, and if he was incumbered by conditions, he must show that he has performed them. In the law of conditions there is another rule, to wit; that no stranger can take advantage of the breach of a condition, — by which it is to be understood that no stranger can enter for a breach of conditions ; yet a grantee under the original grantor may doubtless protect his possession against a forfeited title. Sheppard’s Touchstone, title Condition. So that even this rule cannot be made to avail Foster as against the tenants in possession.
As to the power of a grantor to waive conditions there can be no question, and the Court so in substance instructed the jury, without any testimony in the cause which called for an application of the principle, so that in this there was no error.
The next- charge asked was, that if Foster resided on his reserve four years and eight months, a mere absence from the land, without *579 an intention of fixing a residence elsewhere, did not amount to a change of residence, and his domicil was still on the reserve until the 24th Feb. 1836, unless he had previously fixed on another residence. The general propostion contained in this charge is, that one residence is not lost until another is acquired ; to the truth of which, in its application under a treaty requiring actual residence, we cannot, assent. One home may be abandoned before another is selected. If Foster left with the intention to abandon, he lost his right, whether he afterwards selected another home or not.
The Court was lastly requested to instruct the jury, that if Foster.was entitled to a reservation under the 14th article of the treaty, and had it located by the proper agent, he thereby acquired á title in fee simple, without five years’ residence on the land. This question of residence is the important point in the cause, and Foster’s inability to prove its continuance for the required time, seems to present an impediment fatal to his right. When the case was first before this Court, a residence of five years was held to be a condition subsequent, and its performance indispensable to a perfect title. Altogether, there is nothing in the refusal to charge the jury as requested by plaintiffs’ counsel that will authorize a reversal of the judgment.
5th. The fifth error assigned is, that the Court erred in charging as requested by defendant’s counsel. The several charges given at the request of defendant’s counsel, fall within the remarks already made, or conform to the principles settled on the first trial of this case, except one, and this requires some further notice. The Court charged the jury that the certificate of Geo. W. Martin, upon the application of Hugh Foster, read in evidence, is not evidence that Hugh Foster’s reservation was in pursuance of and according to the terms of the treaty of Dancing Rabbit Creek, nor that said location of G. W. Martin included the improvement of Hugh Foster. This certificate is indorsed on the back of Foster’s application, and is in these words : “ Hugh Foster is registered for the within described tract of land. The Register is requested to res'erve the same from sale, as per instructions from the War Department to me to reserve lands for said Foster, of-date. Geo. W. Martin.”
It seems that Martin was appointed locating agent for the reserves *580 provided for under the treaty of Dancing Rabbit Creek. Land Laws, part 2, 481 — 483. The object of his appointment could only be accomplished by conferring on him the power to determine, to some extent, the rights of claimants who presented themselves under the provisions of the treaty. The register was required to withhold from sale, lands so ordered to be withheld by the locating agent. The purpose of Martin’s appointment must have been to enable the proper department to ascertain who were entitled to reservations. When, therefore, he certifies that Foster was registered for the land claimed by him, that certificate must have constituted the incipient evidence of title. We have' not been referred to any act of Congress, or order of the proper department, which defines this duty of the locating agentbut assuming that he acted within the scope of his authority, then his certificate was entitled to credit, and must be regarded as evidence that’Foster had brought himself within the provisions of the treaty, so far as to lay a proper foundation for a title, afterwards to be consummated. If he afterwards forfeited his right, still the certificate was admissible to show its commencement. In the first decision of this case, this certificate was held to be admissible as a matter of evidence, but the decision of the Court below virtually excluded it, and in this we think there was error ; for which the judgment must be reversed, and the cause remanded.